## Emma Horst, Appellee, v. St. Louis Electric Terminal Railway Company, Appellant.

### (Not to be reported in full.)

Appeal from the City Court of Granite City; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed April 17, 1916.

### Statement of the Case.

Action by Emma Horst, plaintiff, against St. Louis Electric Terminal Railway Company, defendant, for damages for personal injuries sustained as a result of falling into an excavation made by defendant in a

*See **Illinois Notes Digest, Vols. XI to XV,** and **Cumulative Quarterly,** same topic and section number.

street.  From a judgment for plaintiff for $6,000 upon a remittitur of $2,500, defendant appeals.

At the time of the injury to plaintiff, October 10, 1913, defendant was operating an electric railway line and engaged in the carrying of passengers from St. Louis to Granite City.  Plaintiff was a passenger on one of defendant's cars on the day in question, and was riding from St. Louis to Granite City, where she resided.  Defendant had a car shop in Granite City on G street between Sixteenth and Seventeenth streets, and when the car upon which plaintiff was a passenger reached the shop it went upon a side track for the purpose of making some repairs to the air brakes.  The car had been delayed and at that time was about an hour late.  It arrived at the shop soon after six o'clock p. m.  After it had stood upon the repair track for several minutes plaintiff, together with other passengers, left the car and walked north on G street.

G street was one of the public streets in Granite City, but had no walks upon it between Sixteenth and Seventeenth streets, and as plaintiff and other passengers walked north on G street to Seventeenth street they followed the tracks of defendant's car line. Plaintiff testified that it was dark and raining and there were no lights of any kind to guide her, and after she had walked north about twenty steps she fell into the excavation in question.  She was helped out of the hole and continued to Seventeenth street, where she boarded a car for her home.

Plaintiff and two other witnesses testified that while the car was waiting a passenger asked one of the crew if the car was going any further and he said: "This car isn't going any farther.  Get off here and walk up to Seventeenth and catch the next car."  Then plaintiff and other passengers left the car and started for the place indicated.

There was some dispute as to the size and depth of the excavation into which plaintiff fell.  She testified

that the hole was about four feet deep, that she stepped right into it and was unable to get out alone, that she was helped out and assisted to the corner and there put on a car going to her home. She further testified that she was covered with mud, that her hands and arms were scratched and that she was suffering with a sprained ankle on her left foot and had pains in her right side. When she reached home Dr. King was called and she continued to suffer with pains in her foot and right side, the lower portion of her back and hips. She testified that her foot remained in that condition for about two weeks. On Sunday following her injury, in company with her husband, she went from Granite City to visit her father at Alhambra, Illinois, returning Sunday evening, walking to and from the cars. Her condition as to pregnancy at the time of her injury was uncertain. Her period for menstruation had passed about fifteen days, and following the fall it commenced with rapidity and continued for several days. For the next two or three weeks she was under a physician's care and an examination five weeks after the fall disclosed a retroflected or retroverted uterus with some prolapse. At the time of the trial Dr. King testified that the uterus was tipped back and at the time for menstruation it was necessary to use a dilator to give her relief. He did not testify that she had a miscarriage, but said that it was possible. He also testified that in her present condition she could not become pregnant and that it would require an operation to relieve her. This was the extent of her injury.

Complaint was made of the following instruction given in behalf of plaintiff:

"The Court instructs the jury, that if you believe from a preponderance of the evidence that plaintiff became a passenger on a street car of the St. Louis Electric Terminal Railway Company, in St. Louis, Missouri, to be carried to a certain point in Granite

172     Appellate Courts of Illinois.

Horst v. St. Louis Electric Terminal Ry. Co., 199 Ill. App. 169.

City, Illinois, on October 10th, 1913; and if you further believe from the evidence, that the said street car came to a stop at Sixteenth and G streets, in Granite City, which was not the destination of plaintiff; and if you further believe from the evidence, that plaintiff was then directed, by a servant of the said company in charge of the said street -car, to leave said street car and walk up the track of the St. Louis Electric Terminal Railway Company, and board another street car, which was waiting at Seventeenth street, to convey her on to her destination, then she was a passenger of the St. Louis Electric Terminal Railway Company during the time that she was walking up the track from the street car on which she had been riding to the one which awaited her.''

The court further instructed the jury that ''common carriers are required to do all that human care, vigilance and foresight can reasonably do, consistently with the character and mode of conveyance employed and with the practical operation of the road, to prevent injury to passengers.''

Terry, Gueltig & Powell, for appellant; George W. Burton and Graham & Graham, of counsel.

H. J. Bandy and R. W. Griffith, for appellee; J. M. Bandy, of counsel.

Mr. Justice McBride delivered the opinion of the court.

### Abstract of the Decision.

1. Carriers, § 483*—*when instruction on existence of relationship of passenger and carrier correct.* In an action by a street car passenger to recover damages for personal injuries sustained as the result of falling into an excavation made by defendant in a street at a point between its car shops, at which the car stopped for re-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Horst v. St. Louis Electric Terminal Ry. Co., 199 Ill. App. 169.

pairs, where plaintiff alighted under the direction of defendant's employees to take a waiting car at the next street corner, an instruction on the existence of the relationship of carrier and passenger *held* correct.

2. CARRIERS, § 329*—*when relation of carrier and passenger not terminated.* The relation of passenger and carrier exists where a street car passenger, after the car in which he is riding reaches the car barns where repairs are to be made, alights from such car under direction of the street railroad employees for the purpose of taking a car at the next street corner and is injured while walking on the car tracks, in the absence of sidewalks, to take such car, as the result of falling into an excavation in the street between the barns and such corner.

3. CARRIERS, § 482*—*when instruction not erroneous as assuming facts.* In an action by a street car passenger to recover damages for personal injuries sustained as the result of falling into an excavation made by defendant in a street at a point between its car shops, at which the car stopped for repairs and where plaintiff alighted under direction of defendant's employees to take a car at the next corner, an instruction *held* not erroneous as assuming that plaintiff was directed to leave the car, walk up defendant's track and take a waiting car where, although there was no evidence to show that a car awaited plaintiff at such corner, yet there was evidence that plaintiff did take the next car at the corner.

4. CARRIERS, § 484*—*when instruction on the care required towards passengers correct.* In an action by a street car passenger to recover damages for personal injuries sustained as the result of falling into an excavation made by defendant in the street at a point between its car shops, at which the car stopped for repairs and where plaintiff alighted under the direction of defendant's employees to take a car at the next corner, and such corner, an instruction on the care required of common carriers to prevent injury to passengers *held* to be correct.

5. CARRIERS—*what degree of care required towards passenger alighting under direction of employee short of destination to take another car.* Where a passenger, upon a street car reaching car shops at which it is necessary to make repairs to the car, alights under the direction of the company's employees to take a car at the next corner and, owing to the absence of sidewalks, walks up the track and is injured by falling into an excavation made by the company in the street, the ordinary rule as to the degree of care required of a carrier towards a passenger on one of its cars applies, and the carrier is held to the highest degree of care and caution, consistent with the practical operation of the road for the safety and security of passengers.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Horst v. St. Louis Electric Terminal Ry. Co., 199 Ill. App. 169.

6.  NEGLIGENCE, § 140*—*when burden of proof on plaintiff.*  In an action for damages for injuries negligently inflicted, under a plea of not guilty, the burden of proof is on plaintiff.

7.  EVIDENCE, § 365*—*when opinion evidence inadmissible.*  Where it is neither admitted nor denied in an action for damages for injuries negligently inflicted that plaintiff suffered his injuries as the result of a fall as alleged in the declaration, but defendant seeks to show that the injuries complained of are due to other causes than a fall, it is not proper for witnesses to give their opinions as to the cause of the injury.

8.  EVIDENCE, § 365*—*when opinion evidence inadmissible.*  Where there is a conflict in the evidence as to whether the plaintiff was injured in the manner claimed, it is not competent for witnesses to give their opinions on that subject.

9.  DAMAGES, § 114*—*when verdict for injuries to uterus, temporarily precluding pregnancy excessive.*  In an action for damages for personal injuries sustained by a woman street car passenger as the result of falling into an excavation in the street made by defendant, while on her way to the next street corner to catch another car, after the car on which she was riding had stopped at the car barns for repairs and she had been directed to take another car at such corner, a verdict for $8,500, upon which a remittitur of $2,500 had been required, for minor injuries and an injury to her uterus precluding pregnancy, unless an operation was performed, *held* excessive.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.